UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERYL L. VANNORTWICK, as the
Personal Representative of the Estate of
CLAUDE STEVENS,

          Plaintiff,                  Civil Case No. 17-12507
                                     Honorable Linda V. Parker

v.

ANTHONY H. STEWART,
WILLIS CHAPMAN,
VINDHYA S. JAYAWARDENA,
ROBERT HILLYER, FRANCIS K. AWOSIKA,
RUTH C. ROULEAU, CHRISTINE E. WHITE,
LANA MCCARTHY, CORRECTIONS OFFICER
CAROTON, CORRECTIONS OFFICERS JAMES,
KEITH BARBER, ERIC MATTSON,
LARRY MARSHALL, BARBARA BOLES[1], and
CORIZON HEALTH, INC.,

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

      This lawsuit arises from the August 4, 2014 death of Claude Stevens, while

serving a three-year prison sentence in the custody of the Michigan Department of

Corrections ("MDOC").  Plaintiff is the personal representative of Mr. Stevens'

estate.  Defendants fall within the following three categories:

---

[1] Plaintiff initially identified this Defendant as "Barbara Doe"; however, the parties appear to recognize that the correct identity of this individual is Barbara Boles. Accordingly, the Court is *sua sponte* amending the case caption to reflect the identity of this defendant.

(1) MDOC officers who interacted with Mr. Stevens prior to his death: Assistant Residential Unit Supervisor ("ARUS") Christine White; Health Unit Manager Lana McCarthy; and Corrections Officers Caroton and James;

(2) The entity with which MDOC contracted to provide medical care to inmates, Corizon Health, Inc. ("Corizon"), and health care doctors and nurses working for Corizon or the subcontractor Corizon hired to provide dialysis treatment: licensed physicians Vindhya S. Jayawardena and Robert Hillyer; licensed nurse practitioner Francis K. Awosika; registered nurse Ruth C. Rouleau; dialysis nurse Larry Marshall; and dialysis technician Barbara Boles; and,

(3) Individuals who investigated the medical care provided Mr. Stevens during his incarceration or the circumstances surrounding his death: Warden of the Detroit Reentry Center, Anthony H. Stewart; Deputy Warden of the Detroit Reentry Center, Willis Chapman; Administrative Assistant to the Warden, Francis Konieczki; and Ombudsmen Keith Barber and Eric Mattson.

In an Amended Complaint filed September 11, 2017, Plaintiff asserts the following claims against these defendants:

(I) An Eighth Amendment cruel and unusual punishment claim, brought pursuant to 42 U.S.C. § 1983 against the "Nurse Defendants" (Awosika, Rouleau, McCarthy, Marshall, and Boles);

(II) An Eighth Amendment cruel and unusual punishment claim under § 1983 against the "Physician Defendants" (Jayawardena and Hillyer);

(III) An Eighth Amendment cruel and unusual punishment claim under § 1983 against the "Corrections Defendants" (White, Caroton, and James);

(IV) An Eighth Amendment failure to intervene claim under § 1983 against the "Ombudsmen Defendants" (Barber and Mattson);

(V) An Eighth Amendment Conspiracy Claim under § 1983 against all individual defendants;

(VI) Wrongful death under Michigan law, Mich. Comp. Laws
§ 600.2922; and,

(VII) Breach of contract against Corizon.

(Am. Compl., ECF No. 16.)  The Honorable John Corbett O'Meara, to whom this

case previously was assigned, declined to exercise supplemental jurisdiction over

Plaintiff's state law breach of contract and wrongful death claims and therefore *sua*

*sponte* dismissed without prejudice Counts VI and VII of Plaintiff's Amended

Complaint on September 19, 2017.[2]  (Order, ECF No. 18.)

On September 22, 2017, Defendants Jayawardena, Awosika, and Corizon

filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

(ECF No. 23.)  Defendants Marshall and Boles filed a motion to dismiss pursuant

to Rule 12(b)(6) on November 4, 2017.  (ECF No. 41.)  The motions have been

fully briefed.  On February 16, 2018, Judge O'Meara recused himself from this

matter and it was assigned to the undersigned.  (ECF No. 62.)  Finding the facts

and legal arguments sufficiently presented in the parties' briefs in regard to the

pending motions to dismiss, this Court is dispensing with oral argument with

respect to the motions pursuant to Eastern District of Michigan Local Rule 7.1(h).

---

[2] Because the only claim asserted against Corizon in the Amended Complaint is
Plaintiff's breach of contract claim (Count VII), Corizon also should have been
dismissed as a party to this action as a result of Judge O'Meara's order.  This Court
is now doing so.

3

For the reasons that follows, the Court is granting in part and denying in part the pending motions to dismiss.

## I.      Motion to Dismiss Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading

stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

## II.     Factual Background

In August 2013, Mr. Stevens began serving his three-year prison sentence in MDOC custody. Mr. Stevens' physical evaluation during intake uncovered nothing remarkable. He had undergone open heart surgery in November 2008; however, the assessment of his cardiovascular system at intake revealed "regular rhythm. No murmurs, gallops or rubs."

In mid-November 2013, Mr. Stevens began suffering flu-like symptoms and approximately a week later experienced decreased urine output and increased pain in his lower abdomen. According to Plaintiff, prison medical staff failed to treat Mr. Stevens' symptoms or perform any diagnostic tests to determine their medical origins. In mid-December 2013, however, MDOC medical staff referred Mr. Stevens to McLaren Greater Lansing Hospital ("McLaren") for medical treatment.

There, Mr. Stevens was diagnosed with acute renal failure and acute diverticulitis of the large intestine, which caused significant colonic perforations resulting in sepsis and air in his abdomen. McLaren physicians also diagnosed Mr. Stevens with toxic metabolic encephalopathy attributed to his renal failure, which caused him to suffer from delirium, periodic hallucinations, benign tremors, and diminished speech capabilities.

In mid-January 2014, Mr. Stevens was returned to the prison population with the recommendation by McLaren physicians that he receive hemodialysis three times a week and a follow-up colonoscopy to determine the nature and extent of his intestinal perforations. MDOC transferred Mr. Stevens to the Detroit Reentry Center (hereafter "RRF") in late January 2014, so he could receive onsite dialysis. Throughout February and March 2014, Drs. Jayawardena and Hillyer declined to refer Mr. Stevens for a colonoscopy.

In late March 2014, Mr. Stevens began experiencing abdominal cramping and observed blood in this stool. At that time, Dr. Jayawardena referred him for a colonoscopy, which occurred at McLaren on April 10, 2014. The colonoscopy revealed ulcerative colitis throughout Mr. Stevens' entire colon. McLaren physicians therefore recommended colorectal surgery.

During Mr. Stevens' surgery on April 16, 2014, the surgeons discovered extensive ulcerative colitis throughout his colon, rectum, and anus, requiring a total

proctocolectomy and permanent ileostomy.  Diagnostic tests performed during Mr. Stevens' stay at McLaren also indicated that he had developed a heart murmur.

In late April 2014, Mr. Stevens was discharged from McLaren and returned to RRF.  While McLaren physicians recommended Mr. Stevens for a follow-up visit with his colorectal surgeon, neither Dr. Jayawardena nor HUM McCarthy scheduled him to do so.

By mid-June 2014, Mr. Stevens exhibited hyperkalemia (i.e., abnormally high potassium levels), requiring him to undergo inpatient hemodialysis at McLaren and the Detroit Medical Center ("DMC").  Hospital physicians also replaced Mr. Stevens' Ash catheter, which temporarily lowered his potassium levels.  After returning to RRF, Mr. Stevens continued to suffer from hyperkalemia from July through early August 2014.  He also began suffering from Stage V renal failure.  During his return for inpatient hemodialysis at DMC, doctors expressed concern that Mr. Stevens' hyperkalemia could substantially impair his heart functioning.  Dr. Jayawardena noted in Mr. Stevens' MDOC medical file: "[P]atient has a very high potassium level – at risk for cardiac arrest."

Nursing staff at RRF informed Mr. Stevens of the symptoms typically associated with hyperkalemia, including nausea, vomiting, and tiredness, and directed him to immediately report the onset of any of these symptoms to the facility's healthcare unit.

On August 2, 2014, Mr. Stevens' Ash catheter port became dislodged which prevented him from receiving dialysis. Mr. Stevens complained to dialysis technician Barbara Boles, but she did not immediately refer him for a catheter port replacement. Ms. Boles instead told Mr. Stevens she would leave a reminder note for the prison nursing staff.

The next day, August 3, 2014, Mr. Stevens became seriously ill and began vomiting in his cell. At 1:00 p.m. on August 4, 2014, Mr. Stevens reported to Nurse Awosika with continued nausea and vomiting. Nurse Awosika noted in Mr. Stevens' medical file: "Patient was positive for dark brown emesis." Approximately an hour later, Nurse Rouleau reported Mr. Stevens' blood pressure to be 157/64. In the interim, at 1:25 p.m., Dr. Jayawardena ordered a complete blood count ("CBC") for Mr. Stevens to be sent to DMC for laboratory analysis.

At 2:30 p.m. on August 4, Mr. Stevens reported persistent vomiting, headache, and numbness in his limbs to ARUS White and Corrections Officers James and Caroton. They instructed Mr. Stevens to return to his cell. Approximately thirty minutes later, Mr. Stevens reported to dialysis nurse Marshall who took Mr. Stevens' vital signs and stated they were stable. Despite Mr. Stevens continued symptoms of hyperkalemia, Nurse Marshall directed Mr. Stevens to return to his cell without further medical intervention.

At 4:39 p.m., DMC faxed Mr. Stevens' CBS results to RRF, which reflected potassium levels above 7 millimoles per liter of blood (normal levels range from 3.6 to 5.2 millimoles per liter of blood).  No action was taken by the prison's medical staff and Mr. Stevens remained in his cell without medical treatment.  At 6:30 p.m., Mr. Stevens' fellow inmates carried him to the healthcare unit.  When Mr. Stevens' blood pressure was taken by Nurse Rouleau at 7:05 p.m., it was 198/81.  He was transported by ambulance to DMC at approximately 7:30 p.m., but experienced cardiac arrest in route and was nonresponsive when he arrived there at 7:48 p.m.  He was pronounced dead at 8:23 p.m.

Warden Stewart, Deputy Warden Chapman, and Administrative Assistant Konieczki thereafter investigated the events surrounding Mr. Stevens' death; however, their findings are unknown because they either failed to produce to Plaintiff or failed to preserve any records of the investigation.

During Mr. Stevens' incarceration, Plaintiff continuously petitioned Ombudsman Barber and Ombudsman Mattson with the Michigan Legislative Corrections Ombudsman's Office in Lansing, Michigan, to investigate the medical care Mr. Stevens' was receiving at RRF.  On June 25, 2014, Ombudsmen Barber and Mattson allegedly interviewed Mr. Stevens and HUM McCarthy at RRF and then reported: "According to RRF healthcare, hyperkalemia is something that will come and go with a dialysis patient and Mr. Stevens does not have any heart

condition."  Ombudsmen Barber and Mattson sent Mr. Stevens a letter dated July 16, 2014, summarizing their findings from their interviews at RRF, concluding: "At this time, it appears health care at RRF is giving you appropriate access to care."  As indicated, Mr. Stevens died approximately two weeks later.

## III.  Defendants' Arguments in Support of Dismissal

In their pending motion to dismiss, Dr. Jayawardena, Nurse Awosika, and Corizon first argue that the three-year limitations period applicable to § 1983 claims bars Plaintiff's claims arising out of alleged conduct before August 2, 2014. These defendants then seek dismissal of Plaintiff's conspiracy claim, arguing that Plaintiff fails to state a claim upon which relief can be granted.  Specifically, Dr. Jayawardena, Nurse Awosika, and Corizon assert:

> [Plaintiff's § 1983 conspiracy claim] makes only conclusory allegations, fail[ing] to allege an actual agreement between the so-called conspirators "to injure another by unlawful action," *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985), and fail[ing] to allege "that there was a single plan, that the alleged coconspirators shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011) (citation omitted).

(Br. in Supp. of Mot. at 5-6, ECF No. 23 at Pg ID 357-58.)  Alternatively, these defendants argue that Corizon, MDOC, and their respective personnel are all agents of the State of Michigan and thus Plaintiff's conspiracy claim fails due to the intra-corporate conspiracy doctrine.

10

Nurse Marshall and Technician Boles assert similar arguments in their motion to dismiss, although they also contend that the allegations against them fail to assert a viable Eighth Amendment deliberate indifference claim.[3] They maintain that, at most, Plaintiff pleads a medical malpractice claim against them. They therefore also argue that Plaintiff's claim against them is subject to a two-year limitations period and therefore is time-barred in its entirety.

## IV.  Analysis

### A.      Statute of Limitations

"Because Congress did not specifically adopt a statute of limitations governing § 1983 actions, 'federal courts must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought.'" *Wolfe v. Perry*, 412 F.3d 707, 713-14 (6th Cir. 2005) (quoting *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003) (citing *Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985)). The Sixth Circuit has held that Michigan's three-year limitations period for personal injury actions is the appropriate limitations period for § 1983 claims arising in Michigan. *Id*. at 714 (citations omitted).

Regardless of whether the alleged facts demonstrate deliberate indifference to Mr. Stevens' serious medical needs—that is, regardless of whether the claims

---

[3] Nurse Marshall and Technician Boles also move for dismissal of Plaintiff's wrongful death claim. That claim, however, already has been dismissed (albeit without prejudice).

survive Rule 12(b)(6) dismissal—Plaintiff specifically asserts § 1983 claims against defendants, not medical malpractice claims.[4]  As such, a three-year limitations period, not a two-year period as Nurse Marshall and Technician Boles assert, is the applicable period.

"'Although state law provides the statute of limitations to be applied in a § 1983 damages action, federal law governs the question of when that limitations period begins to run.'"  *Wolfe*, 412 F.3d at 707 (quoting *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984)).  The statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred.  *See Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991).  The Sixth Circuit has advised that a claim for deliberate indifference accrues when the inmate is denied the medical attention he seeks or requires. *Hawkins v. Spitters*, 79 F. App'x 168, 169 (6th Cir. 2003).

Plaintiff filed the present action on August 2, 2017.  Any claims based on treatment before August 2, 2014 therefore are barred by the applicable three-year limitations period.  While Plaintiff includes details of Mr. Stevens' medical care (or lack thereof) prior to that date, a review of the Amended Complaint reveals that the asserted § 1983 claims are based on Defendants' conduct in the days preceding

---

[4] In any event, as discussed *infra*, the Court finds that Plaintiff's deliberate indifference claim against these defendants survives their Rule 12(b)(6) motion.  In other words, the Court concludes that Plaintiff alleges a viable § 1983 claim against them.

his death.  (*See, e.g.*, Am. Compl. ¶¶ 62-63 ("While Mr. Stevens exhibited typical symptoms of advanced hyperkalemia on August 3 through 4, 2014, the Nurse Defendants ignored these symptoms and failed to recommend that Dr. Jayawardena or Dr. Hillyer immediately refer him to a local hospital for emergency treatment"); ¶¶ 66-67 ("While Mr. Stevens exhibited typical symptoms of advanced hyperkalemia on August 3 through 4, 2014, the Physician Defendants ignored these symptoms and failed to immediately refer him to a local hospital for emergency treatment.").  As Plaintiff explains in response to the pending motions to dismiss, evidence of conduct outside the limitations period "is relevant to the instant case as it establishes (a) notice to Defendants of [Mr. Stevens'] medical condition and (b) a pattern of deliberate indifference to the serious medical needs of [Mr. Stevens] which led to [his] death on August [4], 2014."  (Resp. Br. at 2, ECF No. 37 at Pg ID 534).

In short, the Court holds that the applicable statute of limitations does not bar any of Plaintiff's claims.

### B. Deliberate Indifference Allegations against Nurse Marshall and Technician Boles

"The Eighth Amendment 'forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward his serious medical needs.'"  *Jones v. Muskegon Cty.*, 625 F.3d 935, 941 (6th Cir. 2010) (quoting *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir.

13

2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976))). In *Jones*, the Sixth

Circuit summarized the elements of an Eighth Amendment "deliberate

indifference" claim as follows:

> A Section 1983 claim asserting "a constitutional violation for denial
> of medical care has objective and subjective components." *Id*. The
> objective component requires the existence of a "sufficiently serious"
> medical need. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct.
> 1970, 128 L.Ed.2d 811 (1994) (citation omitted). Such a medical need
> has been defined as one "that has been diagnosed by a physician as
> mandating treatment or one that is so obvious that even a lay person
> would easily recognize the necessity for a doctor's attention."
> *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citations omitted).
> The subjective element requires "an inmate to show that prison
> officials have 'a sufficiently culpable state of mind in denying medical
> care.'" *Blackmore*, 390 F.3d at 895 (quoting *Brown v. Bargery*, 207
> F.3d 863, 867 (6th Cir. 2000)). Officials have a sufficiently culpable
> state of mind where officials act with "deliberate indifference" to a
> serious medical need. *Farmer*, 511 U.S. at 834, 114 S. Ct. 1970
> (citations omitted). The Supreme Court has defined "deliberate
> indifference" as being more than mere negligence but less than acting
> with purpose or knowledge. *Id*. at 835, 114 S. Ct. 1970. Instead, the
> prison official must have acted with a state of mind similar to
> recklessness. *Id*. at 836, 114 S. Ct. 1970. Thus, to prove the required
> level of culpability, a plaintiff must show that the official: (1)
> subjectively knew of a risk to the inmate's health, (2) drew the
> inference that a substantial risk of harm to the inmate existed, and (3)
> consciously disregarded that risk. *Id*. at 837, 114 S. Ct. 1970; *see also*
> *Cooper v. County of Washtenaw*, 222 Fed. Appx. 459, 466 (6th Cir.
> 2007); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994).

*Jones*, 625 F.3d at 941 (brackets omitted). Plaintiff sufficiently pleads facts to

state a viable deliberate indifference claim against Nurse Marshall and Technician

Boles.

One would have to ignore the allegations in Plaintiff's Amended Complaint to conclude—as Nurse Marshall and Technician Boles assert—that Plaintiff is simply complaining about how quickly these medical providers responded to Mr. Stevens' serious medical needs. Instead, Plaintiff asserts that on August 2, 2014, Mr. Stevens complained to Technician Boles that his Ash catheter port had become dislodged and that she ignored his condition. (Am. Comp. ¶ 45, ECF No. 16 at Pg Id 153.) A logical implication of this allegation is that Technician Boles' conduct resulted in Mr. Stevens not receiving the prescribed dialysis that Technician Boles knew was critical to controlling his hyperkalemia and risk of cardiac arrest. The next day, Mr. Stevens became seriously ill and began vomiting in his cell, a condition which continued until his death on August 4. (*Id* ¶¶ 46-47, 49, 50.) According to Plaintiff, Nurse Marshall observed and examined Mr. Stevens, but ignored his symptoms and the serious risk they posed and "directed Mr. Stevens to return to this [sic] cell without further medical intervention." (*Id.* ¶ 50.) Plaintiff's allegations are sufficient to state a plausible deliberate indifference claim against these defendants.

### C. Conspiracy

A civil conspiracy is "'an agreement between two or more persons to injure another by unlawful action.'" *Bazzi v. City of* Dearborn, 658 F.3d 598, 602 (6th

Cir. 2011) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)).  A

plaintiff alleging a § 1983 conspiracy claim must show that:

> (1) a "single plan" existed, (2) [the defendant] "shared in the general
> conspiratorial objective" to deprive [an individual] of his
> constitutional (or federal statutory) rights, and (3) "an overt act was
> committed in furtherance of the conspiracy that caused injury" to [the
> individual].

*Id.* (quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)).  "'Express

agreement among all the conspirators is not necessary to find the existence of a

civil conspiracy and each conspirator need not have known all of the details of the

illegal plan or all of the participants involved."  *Id.* (brackets removed)

"'It is well-settled that conspiracy claims must be pled with some degree of

specificity and that vague and conclusory allegations unsupported by material facts

will not be sufficient to state such a claim under § 1983.'"  *Spadafore v. Gardner*,

330 F.3d 849, 854 (6th Cir. 2003) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534,

1538 (6th Cir. 1987)).  The Sixth Circuit has acknowledged, however, that

circumstantial evidence may be sufficient proof of conspiracy as "'rarely in a

conspiracy case will there be direct evidence of an express agreement among all

the conspirators to conspire[.]'"  *Id.* (quoting *Weberg v. Franks*, 229 F.3d 514, 528

(6th Cir. 2000)).

As set forth earlier, the defendants moving to dismiss Plaintiff's § 1983

conspiracy claim argue that she does not plead the claim with sufficient specificity.

Alternatively, they argue that the intra-corporate conspiracy doctrine bars the claim. The Court finds a more fundamental defect with Plaintiff's conspiracy claim.

Notably, Plaintiff's conspiracy claim is not premised on Defendants' alleged deliberate indifference to Mr. Stevens' serious medical needs. Instead, it is premised on actions taken with respect to the investigation of his subsequent death. Specifically, Plaintiff alleges with respect to this claim:

> 79. Defendants Stewart, Chapman, and Konieczki (the "Administration Defendants") investigated the events surrounding Mr. Stevens's death. The findings of this inquiry are currently unknown because the Administration Defendants and the remaining Defendants either deliberately destroyed or failed to preserve any records of the investigation.

> 80. Upon information and belief, none of the corrections, nursing, or medical staff at RRF were either disciplined or terminated because of their deliberate indifference to Mr. Stevens's serious medical condition.

> 81. In view of the foregoing, the Administration Defendants conspired with the remaining Defendants to form a single plan to conceal the extensive pattern of constitutionally deficient medical care that caused Mr. Stevens's death. This concealment occurred when the Defendants deliberately destroyed or failed to preserve any records of the investigation into the events surrounding Mr. Stevens's death.

(Am. Compl. at 16-17, ECF No. 16 at Pg ID 159-60.) These allegations do not assert the denial of a federal statutory or constitutional right.

As stated in the first paragraph of this section, a § 1983 conspiracy claim requires proof of a "'general conspiratorial objective' to deprive [an individual] of

his *constitutional (or federal statutory) rights*." *Bazzi*, 658 F.3d at 602 (emphasis added) (quoting *Hooks*, 771 F.2d at 944). The Sixth Circuit has held that a plaintiff cannot prevail on a § 1983 conspiracy claim without showing an underlying constitutional violation causing injury. *Umani v. Mich. Dep't of Corrections*, 432 F. App'x 453, 462 (6th Cir. 2011) (citing cases).

"There is no statutory or common law right, much less a constitutional right, to an investigation." *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)); *Seigel v. City of Germantown*, 25 F. App'x 249, 250 (6th Cir. 2001) ("[A] finding of incompetent or negligent investigation … is insufficient to establish a constitutional violation."); *see also Flinchum v. City of Beattyville*, 224 F. Supp. 3d 536, 543-44 (E.D. Ky. 2016) ("the plaintiffs do not have a liberty interest in a competent investigation of their family member's death."). In some circumstances, a state actor's destruction of evidence can give rise to a claim for denial of a plaintiff's constitutional right of access to the courts. *See Swekel v. City of River Rouge*, 119 F.3d 1259, 1262 (6th Cir. 1997) (citing cases and explaining that "if a party engages in actions that effectively cover-up evidence and this action renders a plaintiff's state court remedy ineffective, they have violated his right of access to the courts."). Plaintiff, however, does not plead facts supporting such a claim.

Specifically, nowhere in the Amended Complaint does Plaintiff assert that Defendants' destruction or concealment of the investigation records has barred her from meaningfully accessing the courts.  In other words, Plaintiff does not allege any actual prejudice arising from Defendants' conduct in this or any other judicial action.  In fact, Plaintiff is pursuing a claim here to pursue justice for Mr. Stevens' death and appears to have all the relevant facts at her disposal to prove her claims. Notably, she does not allege that Defendants destroyed Mr. Stevens' medical records from the relevant time period, which would establish the care he did or did not receive.

What Plaintiff instead is describing is spoliation.  However, as this Court explained in another case filed by Plaintiff's counsel: "[T]here is no independent cause of action for spoliation of evidence."  *Estate of Romain v. City of Grosse Pointe Farms*, No. 14-12289, 2015 WL 1276278, at *14 (E.D. Mich. Mar. 18, 2015) (citing *Peak v. Kubota Tractor Corp.*, 559 F. App'x 517, 526 (6th Cir. 2014) (citing *Teel v. Meredith*, 774 N.W.2d 527, 529 (Mich. Ct. App. 2009)); *see also Dye v. City of Roseville*, No. 14-cv-11252, 2014 WL 7184460, at *8 (E.D. Mich. Dec. 16, 2014) ("[I]t is well-established that neither Michigan nor federal law permit independent causes of action arising out of an alleged spoliation of evidence.") (citing cases).

In short, even assuming as true that Defendants conspired to cover up a pattern of deficient medical care by destroying or concealing the records of the investigation concerning Mr. Stevens' death, it was the denial of medical care and not the asserted post-death conspiracy that caused the underlying constitutional harm. For this reason, Plaintiff fails to allege a conspiracy to violate her or Mr. Stevens' federal statutory or constitutional rights. The Court finds it unnecessary, therefore, to decide whether the intra-corporate conspiracy doctrine bars the claim.

For these reasons, the Court is dismissing Plaintiff's § 1983 conspiracy claim (Count V) and is *sua sponte* dismissing Defendants Stewart, Chapman, and Konieczki as defendants because this is the only claim asserted against them in Plaintiff's First Amended Complaint.

## V.   Conclusion

In summary, the Court holds that the applicable three-year limitations period bars none of Plaintiff's § 1983 claims. The Court further holds that Plaintiff pleads a plausible Eighth Amendment deliberate indifference claim against Nurse Marshall and Technician Boles. Plaintiff, however, fails to plead a plausible § 1983 conspiracy claim and thus the Court is dismissing Count V of the Amended Complaint.

Accordingly,

**IT IS ORDERED** that the motion to dismiss filed by Defendants Jayawardena, Awosika, and Corizon (ECF No. 23) is **GRANTED IN PART AND DENIED IN PART**;

**IT IS FURTHER ORDERED** that the motion to dismiss filed by Defendants Marshall and Boles (ECF No. 41) is **GRANTED IN PART AND DENIED IN PART**;

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to amend the docket to reflect that Defendant "Barbara Doe" is "Barbara Boles";

**IT IS FURTHER ORDERED** that Defendants Corizon Health, Inc., Anthony Stewart, Willis Chapman, and Francis Konieczki are **DISMISSED AS PARTIES** to this lawsuit, as all claims against them in Plaintiff's Amended Complaint are now dismissed.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: May 14, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, May 14, 2018, by electronic and/or U.S. First Class mail.

s/ R. Loury
Case Manager